Melissa Ann **FULCHER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–07–00303–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 6, 2008.

Discretionary Review Refused
Nov. 5, 2008.

Deborah Letz, Assistant Appellate Public Defender, San Antonio, TX, for appellant.

E. Bruce Curry, District Attorney, Kerrville, TX, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## MEMORANDUM OPINION

Opinion by KAREN ANGELINI, Justice.

Appellant, Melissa Ann Fulcher ("Fulcher"), was found guilty of possession of a controlled substance weighing less than one gram. The trial court assessed punishment at one year's confinement, fully probated, a $500.00 fine, and court costs. Fulcher's sole point of error is that the trial court committed reversible error in failing to charge the required culpable mental state in the jury charge.

### STATEMENT OF FACTS

At approximately 2:00 a.m. on September 16, 2004, Deputy Amy Price ("Deputy Price") of the Bandera County Sheriff's Department was notified there was an intoxicated driver in a pickup truck in the Bottle Springs Road area. Deputy Price headed towards that area and spotted a pickup truck parked on the rocks close to a low water crossing. Deputy Price turned on her spotlight and observed a woman, later identified as Fulcher, who was alone, crying, waving her arms, and distraught. Deputy Price requested identification and subsequently determined that Fulcher had outstanding warrants in Bexar County. As a result, Fulcher was placed under arrest.

Deputy Price asked Fulcher whether someone could come and take possession of her vehicle but was advised that no one was available to do so. Consequently, Deputy Price, along with Deputy Jeff Horrell ("Deputy Horrell"), began an inventory search of the vehicle in order to impound it. According to Deputy Price, Fulcher, who was seated in the patrol car during the search, became violent as the search ensued and repeatedly asked for her "drink," a Sunkist bottle located in a cup holder in Fulcher's vehicle. During the search, Deputy Horrell discovered an Exacto knife, a red handled knife, and a mirror with a white-power residue on it inside the open glove box.

A canine unit, manned by Deputy Gerald Johnson ("Deputy Johnson"), was then called to assist in the search, and the drug dog alerted to the following items: the Sunkist bottle located in the cup holder; the floorboard; Fulcher's purse; a marijuana joint concealed in the console; a blue canvas bag containing woman's clothing and broken pieces of a lightbulb with burnt residue on them; and an area under the vehicle where a broken light bulb with burn marks on it was found. The only items submitted for further testing were the mirror, the broken lightbulb removed from the blue bag, and the contents of the

Sunkist bottle. Both the mirror and the light bulb fragments tested positive for trace amounts of methamphetamine; however, the contents of the Sunkist bottle tested negative.[1] Fulcher was indicted for possession of a controlled substance and pleaded not guilty.

At trial, Deputy Price testified that, on the night in question, she observed Fulcher's pupils to be very large and that they did not respond well to the light, which she stated was indicative of drug use. Additionally, during the strip search conducted at the jail, Price observed Fulcher to have numerous sores and blisters all over her body, which she also stated was indicative of a methamphetamine user.

Deputy Horrell testified that the mirror, which contained white-powder residue, was found "[i]n the glove box, and [the glove box] was actually open at the time." Upon discovering the mirror and observing the residue, Deputy Horrell removed it from the vehicle; therefore, it was not inside the vehicle when the drug dog alerted on various items in and around Fulcher's vehicle. Deputy Horrell also went on to explain that open glove boxes are commonly used by methamphetamine users to lay the mirror on so that they can chop the crystals. Further, Deputy Horrell testified that the broken pieces of light bulb, which were found inside the blue bag where the drug dog alerted, tested positive for methamphetamine.

Deputy Johnson, the canine handler, testified that he inspected the Sunkist bottle the dog alerted to and detected small specks on the cap, which he field-tested. Johnson sent the bottle to the drug lab for testing. Deputy Johnson further stated that the light bulb fragments found outside the vehicle that the dog alerted to had a black residue on them consistent with the black-burned residue found in methamphetamine pipes. Deputy Johnson explained that a lightbulb is often adapted as a pipe to smoke methamphetamine and that, on the night in question, Fulcher exhibited physical signs of having smoked methamphetamine or crack cocaine.

Deputy Johnson's suspicions led him to ask Fulcher to stick out her tongue, and when she reluctantly complied, he noted that she had "a real thick white coating across her tongue with blisters," as well as burn marks on her lips. Further, Deputy Johnson observed that Fulcher had sores on her face and arms and that her pupils were dilated. Based on his experience and training, Deputy Johnson testified that this indicated recent drug use and more specifically, the use of methamphetamine or cocaine, as both drugs are melted down and turn into a vapor. Deputy Johnson also testified that along with the other items found, the Exacto knife and red handled knife found in Fulcher's glove box were considered drug paraphernalia.

Joel Budge, an Austin crime lab employee, testified regarding the items sent for testing. Budge indicated that while the contents of the Sunkist bottle tested negative for methamphetamine, he did not test the exterior of the Sunkist bottle, where the drug dog alerted. Budge further testified that the compact mirror and light bulb fragments, identified as State's Exhibit 7, were tested and that both contained a trace amount of methamphetamine. He concluded that Exhibit 7 was the light bulb he tested because it had a strip of paper in the evidence bag marked with the lab's case number and his name.[2]

---

1. The exterior of the Sunkist bottle was not tested.

2. Fulcher argues in her brief that there was a mix-up regarding which light bulb tested positive for methamphetamine because although the crime lab witness testified that the light

Fulcher's husband testified that the day before Fulcher's arrest, they drove to Hondo to look at some property Fulcher intended to purchase with money she recently inherited. Mr. Fulcher stated that a friend referred them to a person, known only as "Nancy", who had neighbors with property they planned to sell. The Fulchers stayed at "Nancy's" house that day and, according to Mr. Fulcher, permitted "Nancy" to use Fulcher's truck, which was about a month old, to move some items. Mr. Fulcher admitted the Exacto knife was his, but denied that his wife owned the blue bag found in her truck. Mr. Fulcher further denied that Fulcher had sores on her body or burned lips when she was arrested.

Fulcher also testified. When asked about the broken glass found under her parked vehicle, she stated she had no knowledge of it. Further, in response to the State's inquiry regarding the mirror found in her glove compartment containing methamphetamine residue, Fulcher stated she did not "recall" a mirror. Fulcher also testified that she had owned the truck for thirty days but had only driven it three times during this period, including, apparently, the trip to Hondo the day before, and the night in question. Fulcher did, however, admit to purchasing the Sunkist that night just prior to arriving at the location.

A jury found Fulcher guilty as indicted. The trial court assessed punishment at one year's confinement, fully probated, a fine, and court costs. Fulcher appeals, contending that the trial court committed reversible error in failing to charge the re-

quired culpable mental state in the jury charge.

### STANDARD OF REVIEW AND APPLICABLE LAW

 In reviewing charge error, we must first determine whether error exists. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Id.; see also Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996). The degree of harm necessary for reversal depends upon whether the error was preserved. *Almanza*, 686 S.W.2d at 171. Error properly preserved by an objection to the charge will require reversal as long as the error is not harmless. *Id.* The court of criminal appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Id.*

 However, for charge error that was not preserved at trial, the defendant must have suffered actual egregious harm, that is, the error must be so harmful that it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex.Crim.App. 2006). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex.Crim.App.2005); *Almanza*, 686 S.W.2d at 174. Absent a showing to the contrary, we may presume that the jury acted rationally. *Richardson v. State*, 879 S.W.2d 874, 882 (Tex.Crim. App.1993). "[E]gregious harm is a difficult standard and must be proved on a case-by-case basis." *Ellison v. State*, 86

---

bulb he tested was found in the blue bag and marked as Exhibit 7, Deputy Johnson testified regarding a second light bulb also found in the blue bag and identified as Exhibit 8. However, the record reflects that, unlike Exhibit 7,

Exhibit 8 was an intact bulb that had not been tested. Further, the crime lab witness testified that Exhibit 7 was comprised of broken glass.

S.W.3d 226, 227 (Tex.Crim.App.2002); *see also Hutch,* 922 S.W.2d at 171.

■ In considering whether jury charge error caused egregious harm, we consider the following: 1) the jury charge in is entirety; 2) the evidence, including the contested issues and the weight of probative evidence; 3) counsels' statements during voir dire and at trial; and 4) any other relevant information in the record. *Stuhler v. State,* 218 S.W.3d 706, 719 (Tex.Crim.App.2007); *Almanza,* 686 S.W.2d at 171. Where the application paragraph correctly instructs the jury but the abstract paragraph is erroneous, any error contained in the abstract instruction is not egregious. *Medina v. State,* 7 S.W.3d 633, 640 (Tex.Crim.App.1999). However, where, as in this case, the jury charge contains all the required mens rea in the abstract and definition paragraphs, but fails to include an explicit mens rea in the application paragraph, we must consider whether jury charge error caused egregious harm as "the crucial part of the charge in determining the existence of fundamental error is that part where the law is applied to the facts." *Hanks v. State,* 625 S.W.2d 433, 435 (Tex.App.–Houston [14th Dist.] 1981, no pet.).

## DISCUSSION

■ Fulcher was indicted with "intentionally and knowingly possess[ing] a controlled substance, to wit, Methamphetamine in the amount of less than one gram." The application paragraph of the court's charge did not include an explicit mens rea, and Fulcher did not object to the jury charge. The State concedes that "it is likely that jury-charge error did occur in this case," but argues that the error did not cause egregious harm. Accordingly, the issue before this court is whether Fulcher suffered actual egregious harm, that is, error so harmful that Fulcher was denied a fair and impartial trial as a result of this charge error. *Sanchez,* 209 S.W.3d at 125.

Fulcher maintains that she was egregiously harmed by the trial court's failure to charge the required culpable mental state because the State failed to prove that Fulcher knowingly and intentionally possessed the items that tested positive for methamphetamine and instead, only showed that Fulcher drove the vehicle. We disagree.

In analyzing the *Almanza* factors, we first look at the jury instructions as a whole. *See Stuhler,* 218 S.W.3d at 719; *Almanza,* 686 S.W.2d at 171. Here, the court's charge began with the abstract paragraph:

### I.

Our law provides that a person commits an offense if, she intentionally or knowingly possesses a controlled substance. Under our law, methamphetamine is a controlled substance.

The abstract paragraph went on to define "intentionally" and "knowingly" as follows:

### III.

A person acts intentionally, or with intent, with respect to the nature of her conduct when it is her conscious objective or desire to engage in the conduct.

A person acts knowingly, or with knowledge, with respect to the nature of her conduct when she is aware of the nature of her conduct or to the circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist.

Immediately following the definition of "intentionally" and "knowingly" is the application paragraph:

## IV.

Now if you find from the evidence beyond a reasonable doubt that on or about the 16th day of September, 2004, in Bandera County, Texas, the defendant, Melissa Ann Fulcher, did then and there possess a controlled substance, to-wit: methamphetamine in an amount of less than one (1) gram, then you will find the defendant guilty as charged.

Thus, in viewing the charge as a whole, the abstract portion of the charge, which contained both the required culpable mental state and the accompanying definitions, sufficiently informed the jury of the mental state required for commission of the charged offense. *See Dinkins v. State,* 894 S.W.2d 330, 339 (Tex.Crim.App.1995); *Lane v. State,* 957 S.W.2d 584, 587 (Tex. App.–Dallas 1997, pet. ref'd).

Second, we look to the state of the evidence and the contested issues. The primary disputed issue at trial was whether Fulcher intentionally or knowingly possessed the methamphetamine. Fulcher claimed she had no knowledge of the items found in her vehicle that tested positive for methamphetamine, had only driven her vehicle three times, and had recently loaned her vehicle to an unknown person by the name of "Nancy."

However, the record reflects that on the night in question, Fulcher, who was alone and had parked her vehicle in an isolated spot, exhibited signs of recent drug use, including excitability, dilated pupils, numerous sores and blisters, and lip burns. Further, although Fulcher denied owning the blue bag found in the back of her truck, which contained a broken bulb with burnt residue, there was evidence that a broken bulb was also found at the scene underneath Fulcher's vehicle on the driver's side, which also contained burned residue consistent with the black burned residue coming from methamphetamine pipes.

Additionally, when asked about a mirror, which contained a trace of methamphetamine and was found in the open glove compartment of her vehicle, Fulcher merely stated that she could not recall any mirror. Further, Fulcher admitting to stopping at an ice house earlier that evening and purchasing a Sunkist, which the drug dog later alerted to, along with the blue bag containing the light bulb fragments.

The only contrary proof presented, other than Fulcher's testimony, was that of Fulcher's husband, who testified that the day before Fulcher's arrest, a friend referred them to a person living in Hondo and known only as "Nancy", whom the Fulchers lent their new truck to later that day so that "Nancy" could move some items. Mr. Fulcher denied that his wife owned the blue bag found in her truck and, further denied that she had sores on her body or burned lips when she was arrested; however, two officers at the scene testified that Fulcher had sores on her face and body, including Deputy Johnson who testified that in addition to sores on her face and arms, Fulcher had "a real thick white coating across her tongue with blisters on her tongue," and burn marks on her lips, which he stated, based on his training and experience, indicated that Fulcher smoked methamphetamine or crack cocaine.

Third, we look to the arguments of counsel. The record reflects that during voir dire, the State told the jury panel at the very beginning of the case that it had to prove that Fulcher intentionally or knowingly possessed a controlled substance. During opening statements, the State repeated a similar statement to the jury.

Thus, in reviewing the jury charge in its entirety, the evidence, and counsel's statements, we find that the court's error in

omitting the requisite mental state from the application paragraph of the charge did not result in egregious harm to Fulcher. *See Stuhler,* 218 S.W.3d at 719; *Almanza,* 686 S.W.2d at 171.

Fulcher's issue is denied.

## CONCLUSION

Finding no egregious harm, we affirm the trial court's judgment.

Dissenting opinion by STEVEN C. HILBIG, Justice.

STEVEN C. HILBIG, Justice, dissenting.

To convict Melissa Ann Fulcher of possession of methamphetamine, the State was required to prove she intentionally and knowingly possessed methamphetamine. During her trial, Fulcher did not contest that a trace amount of methamphetamine was found on two items seized from her truck: a mirror found in the glove box and a broken light bulb found in a blue canvas bag in the back of her vehicle. However, Fulcher disputed that she knowingly possessed the two items. Essentially, her position at trial was she did not intentionally or knowingly possess any item that contained a controlled substance. The trial court's failure to instruct the jury that the State was required to prove beyond a reasonable doubt a knowing or intentional possession of methamphetamine thus "vitally affected" Fulcher's only defensive theory. *See Sanchez v. State,* 209 S.W.3d 117, 121 (Tex.Crim.App. 2006). Because the majority holds Fulcher did not suffer egregious harm as a result of the trial court's failure to include a *mens rea* in the application paragraph of the court's charge, I respectfully dissent.

As the majority opinion correctly states, unpreserved jury charge error is reversible only if the resulting harm is "egre-

gious"; that is, if the error in the charge "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State,* 218 S.W.3d 706, 719 (Tex.Crim.App. 2007). In determining whether there was egregious harm, the reviewing court must consider the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, counsels' arguments to the jury, and any other relevant information revealed by the record of the trial as a whole. *Id.; Sanchez,* 209 S.W.3d at 121. I review each in turn.

### *The Jury Charge*

The jury charge stated in relevant part:

The defendant, Melissa Ann Fulcher, stands charged by indictment with the offense of possession of a controlled substance, to wit, methamphetamine, in the amount of less than one gram, alleged to have been committed on or about the 16th day of September, 2004, in Bandera County, Texas. The defendant has pleaded "not guilty."

**I.**

Our law provides that a person commits an offense if, she intentionally or knowingly possesses a controlled substance. Under our law, methamphetamine is a controlled substance.

**II.**

*Possession* means actual care, custody, control, or management. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of her control of the thing for a sufficient time to permit her to terminate her control.

[definition of "adulterant or dilutant" omitted]

### III.

A person acts intentionally, or with intent, with respect to the nature of her conduct when it is her conscious objective or desire to engage in the conduct.

A person acts knowingly, or with knowledge, with respect to the nature of her conduct when she is aware of the nature of her conduct or to the circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist.

### IV.

Now if you find from the evidence beyond a reasonable doubt that on or about the 16th day of September, 2004, in Bandera County, Texas, the defendant, Melissa Ann Fulcher, did then and there possess a controlled substance, to wit: methamphetamine in an amount of less than one (1) gram, then you will find the defendant guilty as charged.

The majority concludes the charge "sufficiently informed the jury of the mental state required for commission of the charged offense." *Fulcher v. State,* 274 S.W.3d 713, 714, No. 04–07–00303–CR, 2008 WL 3055283, slip op. at 8 (Tex.App.–San Antonio Aug.6, 2008). Although this may be a true statement, the charge did not sufficiently inform the jury of the mental state required for **conviction** of the charged offense. The charge provided the jury the definitions for intentionally and knowingly, but the jury was given no guidance on how to apply those definitions to its determination of Fulcher's guilt. The introductory paragraph of the charge told the jury Fulcher was charged with possession of methamphetamine without any reference to a *mens rea.* Paragraph I instructed the jury that the law provides an offense is committed if possession is intentional or knowing. Yet Paragraph III, the application paragraph, commands the jury to find guilt for possession alone, without any requirement of a *mens rea.*

### *The State of the Evidence and Contested Issues*

The State was required to prove Fulcher intentionally or knowingly possessed an item and knew the item was methamphetamine. *See Joseph v. State,* 897 S.W.2d 374, 376 (Tex.Crim.App.1995). The State's chemist testified two items submitted to him contained trace amounts of methamphetamine. He testified a trace amount, not visible to the naked eye, was found on a broken light bulb. To conduct the test, he had to rinse the glass with water and test the resulting solution:

A: [by chemist] On State's Exhibit 7, I only rinsed two pieces of the glass in State's Exhibit No. 7, the broken glass, so I took out two of the pieces of glass and rinsed them for my analysis.

Q: [by prosecutor] Okay, and I'm assuming if you couldn't weigh it, once you tested it, it no longer exists?

A: The substances that I rinsed were consumed in the analysis, the portion that I analyzed.

The prosecutor continued with questioning about the mirror:

Q: Okay, and that's the same thing for the mirror?

A: Yes, there really wasn't anything for me to scrape off, to weigh, and so I didn't rinse it for my analysis, and it was consumed in my analysis.

Q: Do you remember what type of substance was in the mirror? Was it white, black, blue, or—

A: No, the only thing that I do [sic] was it was a residue. I don't have the color written down, what color it was.

The chemist's testimony about the appearance of the mirror and his testing of it was less than clear. However, the officer who seized the mirror testified a powdery residue was present on its surface. The only additional item the State submitted for testing, the contents of a Sunkist bottle, tested negative for methamphetamine.

The State's evidence thus showed only a trace of methamphetamine on two items. The trace was not visible at all on the broken light bulb and the mirror contained a residue of unspecified appearance and too small to scrape off. " '[W]hen the quantity of a substance possessed is so small that it cannot be measured, there must be evidence other than mere possession to prove that the defendant knew the substance in his possession was a controlled substance.' " *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995) (quoting *Shults v. State*, 575 S.W.2d 29, 30 (Tex.Crim.App.1979)).

To prove Fulcher knew the substance on the mirror and light bulb was methamphetamine, the State presented evidence that she exhibited many signs associated with an abuser of methamphetamine and that she was under the influence of the drug when she was arrested. Deputy Price testified Fulcher had "strong signs" of a methamphetamine user, such as sores and blisters on her tongue and mouth and open sores on her arms and body. Deputy Johnson testified Fulcher also had burn marks on her lips, indicating she had smoked "methamphetamine or crack cocaine." He also testified Fulcher's purse contained receipts for the purchase of items that are used to manufacture methamphetamine. Deputies Price and Harrell testified Fulcher engaged in violent, emotional, and irrational behavior when she was arrested, including banging her head against the side and rear windows of the patrol car. Deputy Johnson testified Ful-

cher's eyes were dilated, which "indicates a stimulant is present inside the body, methamphetamine, cocaine or common stimulants."

The State also sought to prove Fulcher knowingly possessed methamphetamine with evidence that the items containing a trace of methamphetamine were associated with use of the drug. The chemist explained to the jury how drug abusers convert an ordinary incandescent light bulb into a pipe for smoking methamphetamine. Deputy Harrell testified a mirror is commonly used to facilitate the smoking of methamphetamine by using it as a base on which to "chop" the methamphetamine crystals.

Finally, the State attempted to show knowledge of the presence of methamphetamine through testimony that a drug-sniffing dog used during the search alerted to four additional locations in the vehicle. However, the dog handler testified the dog was trained to alert to many different controlled substances, not just methamphetamine. In fact, marijuana was found in one of the locations to which the dog alerted.

The evidence of Fulcher's past and current methamphetamine use could support an inference that she had knowledge the broken light bulb and the mirror contained at least a trace of methamphetamine. However, the inference holds only if the State demonstrated Fulcher knowingly possessed those items. "[P]ossession of the container in which the [controlled] substance is found is not, itself, sufficient to prove a *knowing* possession." *Joseph*, 897 S.W.2d at 377 (Baird, J., concurring). Deputy Harrell testified the light bulb was found in a blue canvas bag in the back of Fulcher's truck and that the bag also contained women's undergarments. The State did not present any other evidence connecting the bag or its contents to Ful-

cher. Fulcher testified she did not own the blue canvas bag, the clothing found in the bag was not hers, and she "did not recall" the mirror.[1] Fulcher and her husband both testified that earlier on the day of Fulcher's arrest, someone named "Nancy" had borrowed the truck to move some of Nancy's personal belongings.

The State clearly established two items found in Fulcher's vehicle contained trace amounts of methamphetamine. However, the evidence she knowingly possessed those items and she knew they contained methamphetamine was far from overwhelming. Fulcher's evidence joined issue on whether she intentionally or knowingly possessed methamphetamine, making the omission of the *mens rea* element from the charge more likely to result in harm.

### The Jury Arguments and Trial Record Trial as a Whole

The possibility of egregious harm resulting from the failure to properly instruct the jury would have been lessened had the attorneys argued to the jury that the *mens rea* was an element required for conviction.[2] But that did not occur.

In voir dire, the prosecutor told the jury one time that it must prove Fulcher "unlawfully, intentionally or knowingly" possessed methamphetamine. The jury heard

reference to the required mental state when the indictment was read. The prosecutor mentioned the *mens rea* element once in his opening statement to the jury. And, after the evidence closed, the judge read the charge to the jury. These were the only times the jury heard any statement about the *mens rea*.

The State did not argue to the jury that it had proved knowing or intentional possession of methamphetamine. Instead, the prosecutor essentially told the jury that an "unknowing" possession was sufficient to convict. In his opening argument, he referred the jury to the "voluntary possession" definition of the charge, telling the jury that mere possession, presuming knowledge from length of time in the vehicle, was sufficient for conviction:

> I don't care if somebody else used the truck earlier in the day. Who cares about that? They drove, her and her husband, drove back in that truck all the way from there back to their house to take care of their kids. That truck was in their possession and under their control all during that time period, and then at sometime that evening the Defendant, by her own testimony, all by herself, drives that truck all the way back up here to Bandera County from San Antonio, a good hour drive, stopped and got

---

1. The majority opinion notes the mirror was found in an "open" glove box. However, the record does not disclose whether the mirror was visible in the glove box.

2. *See and compare Allen v. State,* 253 S.W.3d 260 (Tex.Crim.App.2008) (holding defendant was not egregiously harmed by failure to instruct jury that it must acquit if it had reasonable doubt as to whether victim consented to assault while noting that defense counsel had informed the jury of the correct burden in his closing argument), *and Olivas v. State,* 202 S.W.3d 137 (Tex.Crim.App.2006) (holding error in failing to instruct jury that State had burden to prove deadly weapon issue beyond a reasonable doubt did not result in egregious

harm where both State and defense counsel informed jury of correct burden and standard of proof during jury arguments), *with Green v. State,* 233 S.W.3d 72 (Tex.App.–Houston [14th Dist.] 2007, pet. ref'd) (holding defendant was egregiously harmed by application paragraph of charge that allowed jury to convict if codefendant committed offense without finding defendant guilty as a party, notwithstanding correct statement of law of parties in abstract portion of charge, where State argued to jury that defendant was guilty of murder based on codefendant's firing of fired fatal bullet without arguing culpability based on law of parties).

some gas, got out there to English Crossing, was out there for some period of time. That's plenty of time to know what's going on and what's in your truck. . . .

The charge there under page 2 says possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of her control of the thing for a sufficient time to permit her to terminate her control. You possess stuff that's in your vehicle and you know about it, bottom line.

The prosecutor continued to emphasize mere possession and the voluntary possession definition in his closing, with no mention of the *mens rea* requirement:

The law is, as the Judge has told you, possession means aware of her control of the thing for a sufficient time to permit her to terminate her control. It is actual care, custody, control or management. I don't know, but—but in the vehicle I own, if there's anything in there, I control it because I can pitch it out. If I see something in my vehicle and I think, "Hey, that's not mine. What is it?", what do we do? We check it out—right—especially if we loaned our car out to somebody, which, by the way, you only heard that from Ms. Fulcher and her spouse. . . .

. . . .

A lot of talk here about possession, a lot of talk about it, and I think the thing to focus on is this: If something is in your car, you have control over it. Why? Because it's in your car. Just like the CDs, the clothing, the floor mat, whatever is in your car, you can do with it what you want; right? It's in your car. That is the definition of possession.

. . . .

. . . The only thing they are really arguing over is whether or not the stuff found in the truck was in her possession.

Page 1 of the charge, paragraph 2 [voluntary possession], takes care of that right away. She had the ability to control, manage, do anything she wanted with anything in that truck for at least several hours that night, even giving her the benefit of the doubt, even after it got back from whoever she borrowed it to. . . .

Fulcher's trial counsel never mentioned the *mens rea* requirement in his closing argument. He made only an indirect reference when discussing the amount of methamphetamine discovered by the deputies:

Now, if there was 10 pounds of marijuana, 10 pounds of cocaine in the back seat, that's a deciding difference, but when you have a controlled substance that is under a gram, that according to the chemist, you couldn't even weigh it, couldn't even see it, you actually have care, custody, control and management over that, quote, "trace"?

Based on the trial court's instruction on voluntary possession and the prosecutor's arguments to the jury, the jury could easily have concluded it could presume Fulcher had knowledge of the controlled substances from the passage of time.

### Conclusion

A fair reading of the record reflects Fulcher's defense was that she did not own, was not aware of, and therefore did not possess the drugs with the requisite *mens rea*. The jury charge did not require the jury to find the *mens rea* be proven beyond a reasonable doubt before it could convict Fulcher, and the prosecutor's arguments suggested the jury could convict without finding Fulcher intentionally or knowingly possessed an item she knew to be methamphetamine. Considering the charge as a whole, the state of the evidence, and the arguments of counsel,

the failure to include the requirement of an intentional or knowing possession in the application paragraph of the jury charge vitally affected Fulcher's only defense. Because I believe this error in the charge egregiously harmed Fulcher, I would reverse the trial court's judgment and remand the cause for a new trial.