

## NUMBER 13-19-00294-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**AGUSTIN OSORIO AKA
AGUSTIN OSORIO-SOLORZANO,**                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 54th District Court
### of McLennan County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Agustin Osorio aka Agustin Osorio-Solorzano was convicted of one count of continuous sexual abuse of a young child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02. Osorio received a life sentence of confinement. By four issues, Osorio contends that the evidence is insufficient to prove identity (issue one), and there are

several errors in the jury charge (issues two through four). We affirm.[1]

## I. BACKGROUND

At trial, J.O. testified that she is currently eighteen years old, she was born on January 27, 2001, and her biological father is "Agustin." The record reflects that when asked to identify her father, J.O. "pointed to the Defendant[/appellant] in this case." J.O. testified that her father left her home in 2010 when she was approximately nine or ten, and she had not seen him again until 2019. The State asked J.O. if she recalled "how many times something happened between [J.O.] and the Defendant?" J.O. replied, "I can't tell you exactly how many times because it happened so many times." J.O. stated that "things" began to happen when she was in first grade. J.O. testified that "it would happen in the rest room, my mom's room, my room, and the computer room" and "quite frequently." J.O. explained that Osorio would "touch" her "inappropriately" and "[h]e would usually just . . . touch [her genitals] with his fingers, you know." J.O. stated that the abuse continued while she was in second grade, and she agreed with the State that she was in second grade in the 2008 to 2009 school year. J.O. acknowledged that Osorio's fingers would sometimes "go inside" and outside her genitals. J.O. explained that Osorio "would put me on top of [a] towel thing and there would be a window that I would look outside of and he would—he would take my bottoms off and he would insert his genitals into my genitals while I looked outside." According to J.O., this happened "too many times to count." J.O. knew that Osorio had finished when he would "go away," and "pull up his

---

[1] This case was transferred from the Tenth Court of Appeals in Waco to this Court pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

pants." J.O. took a shower after these encounters because she said, "it felt disgusting" and "sticky."

J.O. testified that Osorio would stand her on a chair in her closet, and "he would put his genitals inside of [her genitals]." J.O. said that during these encounters, she faced Osorio. J.O. stated, "I don't even know how many times it happened," but it usually occurred during the day. J.O. recalled another occurrence where, while on her bed, Osorio put her on his lap and rubbed his fingers on her genitals over her clothes. J.O. testified that she tried to prevent these attacks by not wearing dresses, which she enjoyed, and by wearing tight belts; however, her efforts did not work because Osorio would unbuckle her belt. J.O. stated that she would also attempt to avoid Osorio's actions by staying with her brothers, which sometimes worked. J.O. testified that these acts occurred throughout her life from when she was in first grade until she was in fourth grade.

J.O. recalled that one time in her mother's room, when her mother was in the hospital in November 2010, Osorio woke her up and touched her genitals causing her genitals to bleed. J.O. said that Osorio was touching her genitals with his hand and that it hurt. J.O. was nine years old at that time.

J.O. eventually told her mother that Osorio "was touching" her. Her mother reported Osorio's actions to the police. However, J.O. said that she never told her mother "the kind of detail that [she] told the jury . . . . "

Ann Sims, M.D., the former medical adviser for the Children's Advocacy Center, testified that she interviewed J.O. and documented J.O.'s history in her report as follows:

> When I asked [J.O.] why she was here today, she said that her dad had touched her private area lots of times with his hand. She said that she thinks

it started when she was in the 2nd grade. She said it would happen in different rooms at their house in the daytime while her mother and older brother were away ("went to the store for groceries"), sometimes when she was alone and sometimes when her little brothers were there. She said he would touch her on top of and under her clothes, and that he would slip his hand down the front of her pants and under her panties. She said that his hand would go "inside" her private and that it would hurt. [J.O.] also told me that her dad would pull her pants down and put his private into her bottom from the back, usually while they were standing up. She said that it hurt and left gooey white stuff on her bottom. She said he would also do it from the front, put his private into her private, and that it would also leave the gooey, white stuff. She said she would go to the bathroom afterwards and take a shower, and that sometimes her dad would tell her to take a shower. [J.O.] said that one time, when her dad was staying with her while her mom was in the hospital having her baby, after he put his private part in her bottom, that she saw a spot of blood on the toilet tissue. She said that particular time he came in while she was lying in her bed at night and did it and that it hurt worse than ever. She also said that [three] times, while she was playing games on the computer, he came in and she switched to the car games he liked and walked away, but he grabbed her and put her on his lap and slipped his fingers inside her panties and touched her front private. [J.O.] said that she would wear a belt to try to keep it from happening, so he couldn't pull her pants down and slip his hand in. She said she was afraid to tell because "my mom told me that when she was younger my dad would hit her." [J.O.] said she finally told her mom because she was "tired of it."

Dr. Sims concluded her report as follows: "Assessment—Detailed history of chronic sexual abuse Genital exam consistent with history Recommendations—This child needs to be screened for HIV and syphilis. She needs counseling and therapy."

Detective Maria J. Bucher of the Waco Police Department testified that she acquired a warrant to arrest Osorio based on J.O.'s allegations; however, Detective Bucher had to refer the warrant to the fugitive task force because after two months of trying, she was unable to locate Osorio. According to Detective Bucher, after five years of trying to locate him, Osorio was found and arrested.

4

G.M. testified that she has five children, including J.O. and her son A.A.O.M. G.M. stated that J.O. told her that Osorio had sexually abused her on multiple occasions. G.M. confronted Osorio, and he denied the allegations. According to G.M., after reporting the allegations to the police, Osorio went to Mexico.

On cross-examination, Osorio's defense counsel showed G.M. several pictures admitted as defense exhibits and asked her to identify the pictures. G.M. said that the pictures were of her and her children and were taken after Osorio left for Mexico. Defense counsel asked if Osorio requested the pictures, and she replied, "Yes. In fact, those weren't all for him. Some of them were for my mother. And my mother says she never received them." G.M. said, "I sent them to [Osorio], and he was supposed to give them to [G.M.'s mother] because [Osorio] had sent a man to pick up a car that he had here [with G.M.]. And along with that car, I sent the pictures." G.M. explained she "would send him whatever he would ask . . . for" because according to G.M. she "was scared he would hurt [her] family." G.M. said, "[I asked] Detective Bucher . . . where is he and what can we do about this. And she said, there's nothing I can do while he's . . . in Mexico."

On re-direct examination, the State asked G.M., "Is [your ex-husband] in the courtroom with us today?" G.M. replied, "I don't see him." G.M. denied that Osorio, who was seated at the defense table, was her ex-husband. G.M. explained that Osorio, who was seated at the defense table and wearing a white shirt, looked thinner and older than how she recalled her ex-husband's appearance. She said that her ex-husband had black hair. G.M. agreed with the State that it had been nine years since she had seen her ex-husband and that it was possible that he had "changed what he looked like since then."

J.O.'s brother A.A.O.M. testified that he had not seen his biological father, named Agustin Osorio, since he was twelve years old, which was approximately nine or ten years prior to the trial. The State asked A.A.O.M. if he recognized anyone in the courtroom to be his father, and A.A.O.M. responded that perhaps Osorio was his father. The State informed A.A.O.M. that Osorio had facial reconstructive surgery and asked, "would that explain why the person at the end of the table might not look like the person that you knew?" A.A.O.M. replied, "Possibly. Yeah, I'd believe that."

On redirect examination, the State asked A.A.O.M. if he saw any relatives in the courtroom. A.A.O.M. said, "I see one . . . [t]he guy right there in the back with the stripe shirt." The State asked, "So the guy in the stripe shirt in the white is that your uncle?" A.A.O.M. responded, "I believe he is, yeah." A.A.O.M. stated that he also saw a person he believed to be his grandmother, Osorio's mother, in the courtroom. The State asked, "So does it make sense that the person in the courtroom today is your father—he looks very different—because his brother is here, his mother is here; is that right?" A.A.O.M. replied, "Yes." The State said, "Okay. So it's not like we have the wrong Agustin Osorio, correct?" A.A.O.M. stated, "Yes." The State showed A.A.O.M., State's exhibit 19, a picture of Osorio prior to his facial reconstructive surgery and asked, "Does the person in State's Exhibit No. 19 look familiar to you at all as the person who was your father some six years before this was taken?" A.A.O.M. said, "He does look familiar, yes." A.A.O.M. explained that the mouth area and the eyes looked familiar.

Juana Solorzano Zepeda, Osorio's mother, testified that the defendant identified as Osorio is her son and that her other son, "Juan," was also in the courtroom.

6

Specifically, Zepeda said, "Agustin Osorio Solorzano [,my son,] is present, but he is here as a prisoner." The State asked if Zepeda had seen her former daughter-in-law, identified as G.M. in the courtroom. Zepeda said no, but she did not deny that G.M. was the name of her former daughter-in-law. The State asked Zepeda if she had seen her grandson, A.A.O.M. Zepeda said, "When he passed by a while ago, yes." The State repeated that Zepeda had seen A.A.O.M. and that A.A.O.M. is Osorio's son. Zepeda said, "Yes." The State asked if Zepeda had seen her granddaughter identified as J.O., and Zepeda said she had not. However, Zepeda did not deny that J.O. was her granddaughter. The State showed Zepeda State's exhibit 19 and asked, "Is this [Osorio] before he had his facial reconstruction surgery?" Zepeda requested to see the picture closer and replied, "Yes." Zepeda explained, "At the time of this picture, my son had not been beaten up and had not lost his teeth. He was complete."

The jury found Osorio guilty. The trial court sentenced him to life in prison. This appeal followed.

## II.      IDENTITY

In his first issue, Osorio contends that the evidence is insufficient because the State failed to prove that he committed the charged offense. Specifically, Osorio argues that at trial the witnesses did not recognize him. Osorio does not challenge the other elements of continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02(b)(2).

### A.      Standard of Review and Applicable Law

In determining the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have

7

found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240.

A person commits the offense of continuous sexual abuse of a child if "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" and "the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b)(2). The statute defines "acts of sexual abuse" to include the offenses of indecency with a child by sexual contact, *id.* § 21.11(a)(1), and aggravated sexual assault, *id.* § 22.021. As charged here, Osorio committed continuous sexual abuse of a child if he committed two or more acts of either aggravated sexual assault of a child, indecency with a child by contact, or both during the requisite time period. *See id.* at § 21.02(b)(2). A person commits aggravated sexual

assault of a child if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means, or causes the sexual organ of a child to contact or penetrate the sexual organ of another person, including himself. *Id.* § 22.021(a)(1)(B)(i), (a)(1)(B)(iii). A person commits indecency with a child by contact if, with a child younger than 17 years, whether the child is of the same or opposite sex, the person engages in sexual contact with the child or causes the child to engage in sexual contact. *Id.* § 21.11.

"[A]n uncertain in-court identification of an accused as the perpetrator of a crime, standing alone, is insufficient to support a guilty verdict." *Anderson v. State*, 813 S.W.2d 177, 179 (Tex. App.—Dallas 1991, no pet.). Nonetheless, "the identity of a perpetrator of an offense can be proved by direct or circumstantial evidence." *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (citing *Oliver v. State*, 613 S.W.2d 270, 274 (Tex. Crim. App. [Panel Op.] 1981 (op. on reh'g)). Thus, even if the identification is equivocal, or if no witness positively identifies the defendant as the perpetrator of the offense, corroborating direct or circumstantial evidence will support a guilty verdict. *See id.*; *Hernandez v. State*, 13 S.W.3d 78, 80–81 (Tex. App.—Texarkana 2000, no pet.); *Anderson*, 813 S.W.2d at 179.

**B.    Analysis**

Here, the jury could have considered the indisputable evidence that Osorio's physical appearance in the courtroom was significantly different than it had been at the time of the assaults and that A.A.O.M., G.M., and J.O. had not seen Osorio for approximately ten years. Nonetheless, the record reflects that J.O. identified Osorio by

9

pointing at him as her father whose name is "Agustin."

Osorio's mother identified Osorio in a picture admitted by the trial court showing how he appeared prior to his substantial facial reconstructive surgery, and Osorio's mother confirmed that the defendant was the same person. The jury was able to see Osorio's appearance at trial subsequent to his facial reconstructive surgery and compare it to the picture of how he appeared prior to the surgery.

In addition, G.M. said that her husband's name was Agustin. Both J.O. and A.A.O.M. have the surname Osorio and stated that Agustin is the name of their father. The trial court admitted a defense exhibit which is a warranty deed from Agustin Osorio as grantor to G.M. as grantee signed in 2011. G.M. testified that her husband, Agustin, deeded the property to her when he went to Mexico in 2011. G.M. testified that her husband went to Mexico when she reported the sexual abuse to the police in 2011. Zepeda corroborated that Osorio had been in the United States with his family until he went to Mexico in 2011.

Zepeda further testified that she saw her grandson, A.A.O.M., in the courtroom during the proceedings and that A.A.O.M. is Osorio's son. Specifically, the State asked Zepeda if she had seen A.A.O.M. and if A.A.O.M. is Osorio's son, and Zepeda said, "Yes." Zepeda did not deny that her granddaughter is named J.O. and that her ex-daughter-in-law who was married to Osorio is named G.M.

A.A.O.M. testified that he had seen a person he believed to be his father's mother and brother in the courtroom, and Zepeda corroborated that she and her son, A.A.O.M.'s uncle "Juan" were in the courtroom and that she had seen A.A.O.M., Osorio's son. Finally,

10

Osorio offered, and the trial court admitted into evidence, pictures of J.O., A.A.O.M., G.M., and her other children, which G.M. sent to Osorio at his request when he was in Mexico.

The jury was presented with several witnesses and many pieces of evidence supporting its verdict in what could surely be considered a fact-intensive case. As the fact finder, the jury was entitled to consider all of this, weigh the witnesses' testimony and credibility, and resolve the issue in favor of the verdict. From the evidence presented, the jury could have reasonably inferred that Osorio is J.O.'s father, the person she claims sexually abused her. Accordingly, we find that based on the record in this case, a rational jury could have reasonably found that the State established beyond a reasonable doubt Osorio as the person who committed the offense. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99. We overrule Osorio's first issue.

### III.    CHARGE ERROR

By his second through fourth issues, Osorio contends that there was error in the jury charge warranting reversal. Specifically, by his second issue, Osorio argues that the jury charge improperly included the definitions of both intentional and knowing conduct while indecency with a child only allows a conviction for intentional conduct. By his third issue, Osorio argues that "the abstract definition of 'intent/intentional,' . . . reflected both result-of-conduct and nature-of-conduct; and of 'knowledge/knowingly,' . . . reflected both nature-of-conduct and circumstances-of-conduct." By his fourth issue, Osorio argues that there is error in the charge because "[t]he trial court failed to properly instruct the jury on the applicable chronological perimeter."

11

## A.    Standard of Review

Analysis of jury charge error requires a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). First, we determine whether error exits, and if so, we then must determine whether the appellant suffered harm from that error. *See Abdnor*, 871 S.W.2d at 731–32. The degree of harm required for reversal depends on whether the appellant objected to the jury charge at trial: if the appellant did not object, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19; *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

In response to Osorio's second issue, the State does not contest that the application paragraph in the charge regarding indecency with a child was erroneous because it improperly included the definitions of both intentional and knowing conduct. Moreover, the State concedes error as to the definitions of intentionally and knowingly as argued by Osorio in his third issue that "the abstract definition of 'intent/intentional,' . . . reflected both result-of-conduct and nature-of-conduct; and of 'knowledge/knowingly,' . . . reflected both nature-of-conduct and circumstances-of-conduct." Therefore, we will assume without deciding that there is error on these two grounds, and we will conduct an egregious harm analysis as to Osorio's second and third issues because he did not object to the charge in the trial court. *See Almanza*, 686 S.W.2d

12

at 171.

In conducting an egregious harm analysis, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* Our review must assay the actual, not just theoretical, harm to the accused. *Id.* at 174. Egregious harm is difficult to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Egregious harm is the type and level of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen*, 253 S.W.3d at 264 & n.15; *Olivas v. State*, 202 S.W.3d 137, 144, 149 (Tex. Crim. App. 2006); *Almanza*, 686 S.W.2d at 172.

## B.     Mens Rea (Issues Two and Three)

Looking at the charge as a whole, the abstract portion and the application portion of the charge accurately stated the substantive law of continuous sexual assault of a child; thus, informing the jury of what the State had and did not have to prove. The record reflects that from voir dire onward, the jury was informed that continuous sexual abuse of a child required a finding of two predicate offenses of either aggravated sexual assault of a child or indecency with a child—separated by at least thirty days. In addition, the abstract portion accurately stated the substantive law on the offense of indecency with a child—including the specific intent to arouse or gratify—thus informing the jury of what the State had and did not have to prove. Consequently, within the context of the entire jury charge, the erroneous application paragraph does not appear to have caused

13

egregious harm and weighs in favor of finding no harm. *See Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd) (determining that the charge was not harmful because although the charge erroneously defined "intentionally" and "knowingly" "and included those terms in the application portion of the charge, it did not include them in the abstract portion of the charge setting forth the substantive law of indecency with a child" (citing *Chiodo v. State*, No. 2–06–096–CR, 2007 WL 1952375, at *4 (Tex. App.—Fort Worth July 5, 2007, pet. ref'd) (mem. op., not designated for publication); *Fulcher v. State*, 274 S.W.3d 713, 718–19 (Tex. App.—San Antonio 2008, pet. ref'd))).

Next, except for the occurrence of the alleged offenses, Osorio did not dispute any of the facts.[2] Accordingly, the contested issue at trial was witness credibility; J.O.'s testimony contained all of the elements of continuous sexual abuse of a young child and the predicate offenses, and based on the verdict, the jury found her testimony credible. *See Bazanes*, 310 S.W.3d at 37 (holding that because the primary issue, among others, at trial was the credibility of the witnesses, the error in the charge was not egregiously harmful). Thus, the jury could have inferred the specific intent required for the predicate offenses, including indecency with a child, from J.O.'s testimony describing Osorio's conduct, remarks, and all of the surrounding circumstances during the alleged crime. *See id.* That is, the jury, as the sole judge of J.O.'s credibility and the weight to be given to her testimony, could have inferred that Osorio committed the predicate offense of indecency

---

[2] Osorio did not argue at trial as he now appears to argue on appeal that this is a case of mistaken identity.

14

with a child at least two times by contact and that he had the intent to arouse or gratify his sexual desire when he touched her genitals with his fingers. *See id.* Moreover, the evidence supports a finding by the jury that Osorio committed the predicate offense of aggravated sexual assault at least two times during a period that is thirty or more days in duration based on J.O.'s testimony that Osorio put his penis inside her vagina "too many times to count" from the time she was in first grade until she was in fourth grade.

As to the argument of the parties at trial, neither the State did nor Osorio's trial counsel discussed the requisite specific intent of indecency with a child and aggravated sexual assault of a child. Consequently, the jury was not misled by the arguments of counsel.

On this record, therefore, it is logical to suppose that the jury unanimously agreed that Osorio committed all the separate instances of criminal conduct during each of the incidents as described by J.O. *See Cosio v. State* 353 S.W.3d 766, 778 (Tex. Crim. App. 2011). Accordingly, actual harm has not been shown, and we cannot say that Osorio was denied a fair and impartial trial. *See id.* Based on our review of the charge, the evidence, the arguments of counsel, and other relevant information, we conclude that the complained-of errors in the jury charge did not cause egregious harm to Osorio. We overrule Osorio's second and third issues. *See Almanza*, 686 S.W.2d at 171.

## C. Effective Date of Offense

By his fourth issue, Osorio contends that the jury charge contains error because it allowed the jury to consider acts committed before September 1, 2007, which is the effective date of the statute creating the offense of continuous sexual abuse of a child.

15

Specifically, Osorio argues as follows:

> The court properly instructed the jury on page 6 of the charge that they could consider only acts of sexual abuse, if any, that were committed after September 1, 2007. However, the court instructed the jury 2 pages later that the State was not bound by any particular date and that a conviction could be based on conduct that occurred "at any time prior to the filing of the indictment." The court erred by failing to include a chronological perimeter with this latter instruction.

The trial court instructed the jury, in relevant part, as follows:

> The Defendant, Agustin Osorio, aka Agustin Osorio-Solorzano, stands charged by indictment with the offense of Continuous Sexual Abuse of Young Child or Children, as alleged in the indictment, alleged to have been committed during a period that was 30 or more days in duration, to-wit: from on or about the 1st day of January, 2008 through the 1st day of December, 2010, in McLennan County, Texas. To this charge, the Defendant has pleaded not guilty.
>
> . . . .
>
> You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined. **You are instructed you may only consider acts of sexual abuse, if any were committed, that occurred after September 1, 2007**. [(Emphasis added)].
>
> . . . .
>
> You are further charged that it is the law in this case that the State is not bound to prove the exact dates alleged in the indictment but may prove the offense, if any to have been committed at any time prior to the filing of the indictment. The jury is instructed that the Court has taken judicial notice that the date the indictment in this case was presented was February 17, 2016, and that there is no statute of limitations for the offense charged in the indictment.

In the application portion of the charge, the trial court instructed, in relevant part, as follows:

Now If you find from the evidence beyond a reasonable doubt that the Defendant, Agustin Osorio, aka Agustin Osorio-Solorzano, in McLennan County, Texas, did then and there, during a period that was 30 or more days in duration, to-wit: from on or about the 1st day of January, 2008 through the 1st day of December, 2010, when Defendant was seventeen (17) years of age or older, commit two or more acts of sexual abuse against Jane Doe, a pseudonym, namely, the Defendant did then and there intentionally or knowingly cause the sexual organ of Jane Doe, a pseudonym, a child who at the time was younger than fourteen (14) years of age, to contact the sexual organ of Defendant . . . .

It must be assumed that the jurors read and understood the charge as a whole and that they took both limiting instructions into account in their deliberations. *Hutch*, 922 S.W. 2d at 172. Here, the two instructions are not contradictory; rather, together they instructed the jury that the State need not prove an exact date of commission between January 1, 2008, and December 1, 2010. The trial court also instructed that the jury could not convict Osorio for any act committed before September 1, 2007. The jury was properly instructed that it could only convict Osorio for acts that he committed between January 1, 2008, and December 1, 2010. This time period is not prior to September 1, 2007. Thus, although the charge stated that "the State is not bound to prove the exact dates alleged in the indictment but may prove the offense, if any to have been committed at any time prior to the filing of the indictment," it also clarified that the jury could only find Osorio guilty for acts occurring only after September 1, 2007 between the dates January 1, 2008, and December 1, 2010. Therefore, taken as a whole, the jury charge properly instructed the jury that it could only find Osorio guilty if he committed the alleged acts anytime between January 1, 2008, and December 1, 2010, and it could not consider evidence of acts of

17

sexual abuse, if any, that were committed prior to September 1, 2007.[3] *See Casanova v. State*, 383 S.W.3d 530, 543 (Tex. Crim. App. 2012) (acknowledging that the usual presumption is that jurors follow the trial court's explicit instructions to the letter). Accordingly, we conclude that there is no error in the jury charge on this basis. We overrule Osorio's fourth issue.

## IV.  CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
4th day of February, 2021.

---

[3] We note that J.O. was born on January 27, 2001, and she did not recall any sexual abuse occurring until she was in first grade in approximately 2007 to 2008.